UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:06-CR-00394 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| JOSEPH SMITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Before the court is the Catholic Diocese of Cleveland (the "Diocese"), Bishop Anthony Pilla ("Bishop Pilla"), the Catholic Cemeteries Association (the "CCA") and the Catholic Universe Bulletin's (the "Bulletin") (collectively, the "Diocese") motion for reconsideration [Docket No. 67] of the court's June 14, 2007 memorandum and order [Docket No. 65]. Defendant Joseph Smith ("Smith") and plaintiff United States of America (the "Government") have filed responses, and the Diocese has filed a reply. Generally speaking, a motion for reconsideration should be granted only if there "is a clear error of law," "newly discovered evidence," or "an intervening change in controlling law." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). None of the parties cite to newly discovered evidence or to an intervening change in controlling law, but the Diocese does argue that the court made a clear error of law in its June 14, 2007 memorandum and order in finding that the production of the crime-loss insurance claim documents to the Government and the defendants constituted a waiver of the Diocese's attorney-client and work product privilege over documents sought in **¶ 19a.-c.** of Smith's subpoena. After reviewing the case law cited by all parties, the court finds that it made a clear error of law, and therefore grants the Diocese's motion in part.

First, the court notes that there are, in fact, two different privileges at work when discussing the disclosure of insurance claim documents by the Diocese to the Government and the defendants. The first, under Ohio law, is the privilege that exists between insured and insurer, which was waived by production of the claim to the Government and to the defendants. *See, e.g., In re Klemann*, 132 Ohio St. 187, 193-94, 5 N.E.2d 492, 495 (1936). The Diocese does not seek refuge behind that privilege, and impliedly acknowledges its waiver. However, the other privilege is the one between the Diocese and its counsel ("Jones Day") concerning the documents sought in ¶ **19** of the subpoena: (a) interview notes or memoranda concerning interviews conducted by the Diocese or its agents in connection with internal investigation into these matters beginning January 2004; (b) affidavits or written statements obtained in connection with that investigation, including the statement provided by Gerald Arnold regarding the Zgoznik Entities; (c) all notes, reports, memoranda, or other documents reflecting the substance of interviews of Smith in connection with the investigation.

As the court noted in its June 14, 2007 memorandum and order, the basis for the defendants' assertion that the Diocese has waived any privilege regarding those documents is the fact that the insurance claim that was the product of the Diocese's internal investigation was produced to the Government and the defendants, and the production of privileged documents to another party waives both the attorney-client privilege and the work product privilege with respect to another party seeking the same materials. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 304, 306-07 (6th Cir. 2002). However, where documents are simply based upon privileged documents or communications and contain no specific references, summaries, paraphrases or quotations of those privileged items, privilege is not waived, and the court erred in holding that it was. *United States v. Skeddle*, 989 F.Supp. 905, 911-12 (N.D. Ohio 1997).

On the other hand, where specific references are made to conversations otherwise privileged, privilege over the subject matter of those conversations is waived. *Id.* at 910-11. Therefore, the Diocese has waived any privilege with respect to the subject matter of certain conversations referenced in Attachment A, Description of Circumstances of Diocese's "Discovery" of Smith Losses, attached to the May 3, 2004 letter from Charles Hassell to Carl Grant (CCD-DOJ 00010-00012). Specifically, the privilege has been waived to the subject matter of the conversations and/or communications described in paragraphs 9a. (Reidy-O'Donnell), 9b. (Reidy, O'Donnell and Carfagna), 9c. (message from O'Donnell to Bishop Pilla), 10 (the Lah-Wright conversation only), 13 (both conversations), 16 (Sozio, Carfagna and Smith), 17 (Bishop Pilla, Sozio, auxiliary bishops and Financial Advisory Counsel) and 18 (Bishop Pilla, Reidy, O'Donnell and personnel of Financial and Legal Department) (CCD-DOJ 00011-00012). The Diocese has not waived any privilege with respect to any matters referenced in Attachment C, Description of Circumstances Under Which Loss Occurred, attached to the May 3, 2004 letter (CCD-DOJ 00031-00033). Given the scope of **¶ 19** of the subpoena, the Diocese is therefore hereby ordered to disclose a detailed description of the subject matter of the conversation on January 6, 2004 between Smith, Mr. Sozio and Mr. Carfagna, including which specific items, subjects or topics were discussed, because it has waived any privilege over the subject matter of that conversation due to the specific reference to that conversation in Attachment A (¶ 16, CCD-DOJ 00012).

More importantly, where otherwise privileged communications and documents are disclosed to a third-party expert, and that expert's report is disclosed, then the privilege over those communications and documents is also waived. *In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher ("Willkie")*, No. M8-85 (JSM), 1997 WL 118369, at \*3-4 (S.D.N.Y. Mar. 14, 1997). In its motion for reconsideration, the Diocese likened the submission of its insurance claim to a civil complaint; much

-3-

like a civil action, then, where a party chooses to rely upon and produce the report or analysis of an expert in support of its position, all materials reviewed by that expert become subject to disclosure to enable full and fair rebuttal of that expert's opinion. *See, e.g.,* Fed. R. Civ. P. 26(a)(2)(B), (b)(4), note to 1993 Amendments (stating that "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed"). And since the Diocese disclosed the reports of both Ernst & Young ("E&Y") and Howard Wershbale & Co. ("Wershbale") to the Government and the defendants, then under the Diocese's own analogy, it has waived any privilege over any documents or communications provided to either of those entities to be used in drafting their reports, regardless of whether those documents or communications were relied upon in drafting those reports. The Diocese has waived any privilege over any documents or communications given to E&Y or Wershbale, and any interview or meeting notes made by Jones Day at an interview or meeting where E&Y or Wershbale was present. *Willkie*, 1997 WL 118369, at *3-4.

The Diocese must therefore produce all notes and memoranda, including those made or prepared by Jones Day, concerning interviews of Palmira Juras, Tony Gielty, Tony Lang, Gerald Arnold, Ingrid Schulkers and Justin Turk where E&Y or Wershbale were present at the interview, as well as any notes and memoranda or other documents concerning interviews of those individuals which were provided to E&Y or Wershbale. Also, affidavits or statements obtained from any of those individuals provided to E&Y or Wershdale or made in the presence of E&Y or Wershdale, must be produced.

The court therefore grants the Diocese's motion for reconsideration [Docket No. 67] in part, finds that the Diocese's production of the insurance claim and supporting materials does not constitute

a general waiver of privilege over the investigation conducted by Jones Day, and orders the Diocese to produce only those interview notes and memoranda, affidavits and statements specifically listed above.

IT IS SO ORDERED.

      /s/ Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: July 24, 2007**