UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 1:06-CR-00394 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE ANN ALDRICH |
| ) | |
| ANTON ZGOZNIK, ) | |
| ) | |
| Defendant. ) | |
| ) | SENTENCING MEMORANDUM |
| ) | |
| ) | |

Anton Zgoznik was named in a 27 count indictment filed on August 16, 2006, along with co-defendant Joseph H. Smith. On October 2, 2007, he was found by a jury to be guilty on counts 1 through 9, 18, and 23 through 27.[1]

The court sentences Zgoznik to imprisonment for 12 months and one day on counts 1 through 9 and 12 months and one day on each of counts 18 and 23 through 27, to be served concurrently with the sentence on counts 1 through 9. The court also imposes three years of supervised release on counts 1 through 9, and 18; the court imposes 1 year of supervised release on counts 23 through 27, to run concurrently with each other following the term of imprisonment. Zgoznik shall perform 400 hours of community service during the period of supervised release. Finally, the court orders restitution to the IRS in the amount of $213,978 and to the Catholic Diocese of Cleveland in the amount of $784,627.

---

[1] Count 1 for conspiracy to commit mail fraud in violation of 18 U.S.C. § 371; counts 2 through 9 for mail fraud in violation of 18 U.S.C. §§ 1341 and 1346; count 18 for conspiracy to defraud the IRS in violation of 18 U.S.C. § 371; count 23 for corruptly endeavoring to obstruct and impede in violation of 26 U.S.C. § 7212(a); and counts 24 through 27 for aiding and assisting preparation of a false tax return in violation of 26 U.S.C. § 7206(2).

The court carefully and thoroughly considered the government's sentencing memorandum [dkt. 254], Zgoznik's sentencing memorandum (prepared by his attorney) [dkt. 257], and a sentencing memorandum prepared by Zgoznik himself [dkt. 258]. The court also carefully considered the statements and arguments made during the sentencing hearing.

This sentencing memorandum, together with the sentencing transcript and the judgment and commitment order, provides a thorough explanation of the court's imposition of a non-guidelines sentence. *See* 18 U.S.C. 3553(c)(2); *United States v. Blackie*, 548 F.3d 395, 403 (6th Cir. 2008) (holding that 3553(c)(2) "confers a substantial right to meaningful appellate review" and that "[s]ection 3553(c)(2) requires not only a statement of reasons, both stated 'in open court' and written in a judgment and commitment order, but also that those statements by made with 'specificity.'"; *United States v. Liou*, 491 F. 3d 334, 339 n.4 (6th Cir. 2007) (remarking that "a thorough explanation is the most reliable way for a district court to makes clear its reasons supporting a given sentence").

**I. The Sentencing Framework**

It is the duty of every sentencing judge to evaluate each person as a unique individual, recognizing that he may not fit neatly within the confining rubric of a formulaic sentencing table.[2] The importance of this duty is being fully realized in the years since the sentencing guidelines became advisory and the "'range of choice dictated by the facts of the case' [has been] significantly broadened." *Gall v. United States*, 128 S.Ct. 586, 598 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)); s*ee also United States v. Booker*, 543 U.S. 220 (2005); *United States v. Grossman*, 513 F.3d

---

[2] The Supreme Court recently noted that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 128 S.Ct. 586, 598 (2007) (citing *Koon v. United States*, 518 U.S. 81 at 113 (1996)).

592, 596 (6th Cir. 2008) (noting that *Gall* "shows that the sentencing process involves an exercise in judgment, not a mathematical proof. As a result, appellate courts must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance, and due deference to the sentencing judge's on-the-scene assessment of the competing considerations -which is to say, not just abuse-of-discretion review to the reasonableness of a sentence but abuse-of-discretion review to the district court's determination that there is a legitimate correlation between the size of the variance and the reasons given for it." (internal quotations and citations omitted)).

Sentences that deviate from the advisory guidelines are deemed "neither presumptively reasonable nor presumptively unreasonable." *United States v. Ferguson*, 456 F. 3d 660, 664-65 (6th Cir. 2006). Further, the Supreme Court has expressly rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Gall*, 128 S.Ct. at 595.

"[O]ne of the central points of *Booker*, highlighted by *Kimbrough*, is that a district court judge may disagree with the application of the Guidelines to a particular defendant because the Guidelines range is too high or too low to accomplish the purposes set forth in 3553(a)." *United States v. Johnson*, 553 F.3d 990, 996 (6th Cir. 2009) (quoting *United States v. White*, 551 F.3d. 381, 385 (6th Cir. 2008) (en banc)). The district court's discretion includes the ability to vary from the Guidelines "based solely on policy considerations, including disagreements with the guidelines." *Id.* The Sixth Circuit recently held that the "authority recognized in *Spears* to reject on policy grounds an otherwise-applicable aspect of the Sentencing Guidelines" is not limited to the crack cocaine context. *United States v. Herrera-Zuniga*, 571 F.3d 568, 583-84 (6th Cir. 2009) (citing *Spears v. United States*, 129 S.Ct. 840, (2009)).

Indeed, sentencing judges "possess the authority to 'categorically' reject the sentencing range prescribed by the Guidelines, even in 'a mine-run case where there are no "particular circumstances" that would otherwise justify a variance from the Guidelines' sentencing range.'" *Id*.

The court begins its sentencing analysis, under the Sixth Circuit's post-Booker protocol, by correctly calculating the advisory guidelines sentencing range. The court must then consider the other factors listed in 18 U.S.C. § 3553(a). "In so doing, [the district judge] may not presume that the Guidelines range is reasonable. [She] must make an individual assessment based on the facts presented." *Gall*, 128 S.Ct. at 596-97. Finally, the court should impose a "sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)." *United States v. Lanesky*, 494 F. 3d 558, 561 (6th Cir. 2007). "The court need not recite these factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby*, 418 F. 3d 621, 626 (6th Cir. 2005). In the Sixth Circuit, if the district court's sentencing analysis is procedurally sound, the appellate court reviews the substantive reasonableness of the sentence for abuse of discretion. *United States v. Vowell*, 516 F. 3d 503, 512 (6th Cir. 2008).

**II. Sentencing Guidelines Range**

**1.     Overview**

The court begins by calculating Zgoznik's sentence under the advisory sentencing guidelines. The sentencing guideline offense levels for the mail fraud counts and the tax offense counts are computed separately, with a multiple count adjustment applied to the highest group adjusted offense level. *Weinberger v. United States*, 268 F.3d 346 (6th Cir. 2001). The court finds that Zgoznik's base offense level for the fraud counts is 7. Because the loss range exceeds $400,000 (but is less than $ 1,000,000), a 14 point enhancement raises the adjusted offense level for the fraud counts to 21. *United*

*States Sentencing Guidelines Manual* (U.S.S.G.) §§ 2B1.1(a) & 2B1.1(b)(I). The base offense level for the tax offenses (counts 18 and 23 through 27) is 20, based on a computed tax loss of $432,924. U.S.S.G § 2T1.4. A 2 level enhancement for the use of sophisticated means is also warranted. The adjusted offense level for the tax offenses is 22.

Therefore, using the highest adjusted offense level of 22, the court adds a 2 level enhancement for multiple counts. Accordingly, the total adjusted offense level is 24. Zgoznik has no criminal history points and therefore his criminal history category is I. The advisory guidelines recommend a sentence of imprisonment between 51 and 63 months.

### 2. The Mail Fraud Counts

With regard to the mail fraud counts 1 through 9, the government seeks an additional two-point enhancement for serving an aggravated role in the offense. "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." U.S.S.G. § 1B1.1(c). The government argues that "Zgoznik merits a 2-level enhancement for his role in inducing Jukic to participate in the early phase of the kickback payments to Smith, plus inducing his help with producing some of the false invoices presented to the IRS during the corporate audit." [Dkt. 254, at 10]. In order for § 1B1.1 to be applicable to Zgoznik, he must have "been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 1B1.1, Comment 2. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 1B1.1, Comment 1. Jukic was not indicted for his role in the commission of the offense; because Zgoznik's co-defendant was acquitted of the fraud charges, there is some doubt as to whether Jukic would be found "criminally responsible" for the fraud charges.

Accordingly, this court cannot find that Jukic would be a person "criminally responsible" and therefore a 2-level enhancement under U.S.S.G. § 1B1.1(c) is not appropriate.

Next, the government seeks a two-point enhancement pursuant to U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice. Specifically, the government seeks the enhancement "two separate grounds: (a) his efforts in early 2004 to create a false defense that the payments to Smith were a "Diocesan Executive Compensation Plan," including his recorded effort to induce Zrino Jukic to prepare a false written statement claiming that Father Wright had given tacit approval to the payments to Smith, and (b) his false testimony at trial on certain key aspects of his rejected defense, including his executive compensation story." [Dkt. 254, at 11]. Zgoznik responds that he presented his defense "in good faith." [Dkt. 257, at 22].

Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

While this section might normally apply, the court declines to do so in the instant case. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 583-84 (6th Cir. 2009) (holding that the "authority recognized in *Spears* to reject on policy grounds an otherwise-applicable aspect of the Sentencing Guidelines" is not limited to the crack cocaine context) (citing *Spears v. United States*, 129 S.Ct. 840, (2009)).

In some cases, the nature of the crime alleged and the type of evidence presented to the jury, require the jury to consider the defendant's efforts at obstruction when determining guilt. For example,

-6-

if the jury finds the evidence put before it to be inconsistent or perjurous, then the defendant's defense becomes less credible to the extent the jury determines. Thus, the jury accounts for efforts at obstructing and impeding justice when those efforts are displayed at trial. The sentencing guidelines, however, suggest that a defendant in such cases be penalized again for offering a defense that the jury found not to be credible. In such cases, this court disagrees with the policy of the sentencing guidelines.

Here, the reasons the government puts forth for this enhancement have already been weighed against Zgoznik. The jury heard the tape recorded conversation between Zgoznik and Jukic regarding the plan "to create a false defense" and heard Zgoznik's own testimony at trial. The jury was free to determine the inconsistencies in Zgoznik's testimony and to give weight to the tape recorded conversation. Such evidence - or attempts to obstruct or impede the administration of justice - was weighed by the jury and negatively affected his credibility. Though the evidence produced at Zgoznik's trial was not identical to that produced at Smith's trial (namely, the recorded conversation and Zgoznik's own testimony), Smith was acquitted of the fraud charges. Zgoznik was free to put on his defense and theory of the case. Any efforts at impeding or obstructing justice were put before the jury for its consideration and it, in part, led to his conviction on the fraud counts. Therefore, the court declines to assess 2 additional points for obstructing or impeding justice in this case.

### 3.    The Tax Counts

The base offense level for the tax related offense (counts 18, 23, and 24 through 27) is 20. U.S.S.G. §§ 2T1.4, 2T4.1(H). The PSR recommends applying § 2T1.4 to calculate the base offense level for the tax offenses [PSR, at 23]; the government recommends applying § 2T1.1(a) [dkt. 254, at

21].[3] The court agrees with the PSR, and uses § 2T1.4 to calculate the base offense level. As the PSR stated:

> In this case, the substantive offense is Aiding and Assisting the Preparation of a False IRS Document, a violation of 26 U.S.C. § 7206(2). The United States Sentencing Commission Guideline for a violation of 26 U.S.C. § 7206(2) is found in U.S.S.G. § 2T1.4(a)(1) which states that the base offense level is the "Level from § 2T4.1 (tax Table) corresponding to the Tax loss . . ." According to trial testimony, the tax loss in this case is at least $400,000. Pursuant to U.S.S.G. § 2T4.1(H), the Base Offense Level is 20. [PSR at 23].

The government seeks a 2 level enhancement under U.S.S.G. § 2T1.1(b)(1). This provision is not applicable because the court is calculating the offense level pursuant to § 2T1.4 (which is distinct from § 2T1.1). The PSR recommends a 2 level enhancement pursuant to § 2T1.4(b)(1). However, the court does not find that Zgoznik's tax preparation business was related to the tax offenses in this case. Therefore, the court does not add a 2 level enhancement pursuant to § 2T1.4(b)(1)(B).

Next, the government and PSR recommend a 2 level enhancement because the offenses involved "sophisticated means" (pursuant to § 2T1.1(b)(2) or § 2T1.4(b)(2), respectively). [Dkt. 254, at 24; PSR at 23]. The court did find this enhancement to be warranted in the sentencing of Smith [dkt. 239, at 4]; however, these case are distinguishable. Smith was not convicted of the fraud charges, and thus the payments were not considered kickbacks. Here, however, Zgoznik was found to be passing money through an elaborate kickback scheme. "Sophisticated means" is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G

---

[3] The government's sentencing memorandum [dkt. 254, at 6] applies § 2T1.4(a) in its sentencing guidelines summary computation table. Later in the memorandum [dkt. 254, at 21-24], the government uses § 2T1.1(a) and seeks an enhancement under § 2T1.1(b)(1). Because the government's analysis proceeded under § 2T1.1, the court finds that § 2T1.1 is the government's intended position.

§ 2T1.4(b)(2) at cmt. n. 3. Because the method used to pay Smith was sophisticated as defined by the guidelines and case law, a 2 level enhancement is warranted.

The government also seeks a 2 level enhancement pursuant to § 3B1.1(c) for serving an aggravated role in the offense and relies on "essentially the same reason it applies to the fraud offenses." [Dkt. 254, at 25]. For the same reasons the court declines to apply this enhancement to the fraud offenses, the court declines to apply the enhancement to the tax offenses.

Finally, the government seeks a two-point enhancement pursuant to § 3C1.1 for obstructing or impeding the administration of justice, and relies on "essentially the same reason it applies to the fraud offenses." [Dkt. 254, at 25]. For the same reasons the court declines to apply this enhancement to the fraud offenses, the court declines to apply the enhancement to the tax offenses.

Therefore, Zgoznik's total adjusted offense level is 24, with a criminal history category of I. The sentencing guidelines recommend a sentence between 51 and 63 months.

### III. Section 3553(a) Factor Analysis

Section 3553(a) requires the sentencing court to consider the following factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment," to "afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant," and to provide the defendant with training, medical care, or other treatment; (3) "the kinds of sentences available"; (4) the applicable advisory Guidelines range; (5) relevant policy statements by the Sentencing Commission; (6) "the need to avoid unwarranted sentenc[ing] disparities"; and (7) "the need to provide restitution to . . . victims." 18 U.S.C. § 3553(a). Though the district court must consider these factors, the court need not explicitly analyze each of the

factors in its sentencing determination. *See e.g., United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005).

### 1. Nature and Circumstances of the Offense

Zgoznik was convicted of one count of conspiracy to commit mail fraud, eight counts of mail fraud, one count of conspiracy to defraud the IRS, one count of corruptly endeavoring to obstruct and impede, and four counts of aiding and assisting the preparation of a false tax return.

Zgoznik's conviction involves two related substantive offenses. First, the fraud offenses involved a kickback scheme with Zgoznik's co-defendant, Smith. The Zgoznik Entities fraudulently billed the Catholic Diocese of Cleveland and passed money through to Smith, who was the CFO and Financial and Legal Secretary, the highest ranking financial and legal official of the Diocese.

Second, the tax offenses involved the concealment of the income tax consequences to Smith and Zgoznik Entities from the kickback payments.

Zgoznik and Smith were tried separately. Zgoznik was convicted of all counts - both the fraud and tax offenses. Smith, however, was only convicted of the tax offenses. Thus, the convictions, while legally independent, present the court with a situation where one co-conspirator was convicted of the fraud offenses and the other acquitted.

### 2. The History and Characteristics of Anton Zgoznik

Zgoznik is 42 years old, has lived in the Cleveland area his entire life, and has no prior convictions. He had a good childhood and suffered no abuse. His wife and young son live in a middle class home in suburban Cleveland, which is owned by a family member because of the costs associated with his federal indictment and conviction. Zgoznik has several physical and mental health issues,

including diabetes, high cholesterol, acid reflux, sleep apnea, depression, and anxiety. He is under the care of physicians and mental health professionals.

Zgoznik has been self employed in the accounting and tax business since 1995, including the companies that he founded and operated that were at issue in the fraud and tax offenses. Zgoznik has a Bachelor or Science Degree in Business Administration from John Carroll University and a Master's Degree in Business Administration from Lake Erie College.

Zgoznik's background, education and professional standing in the community cuts both ways,. His situation in life has allowed him to make many beneficial and lasting contributions to his community; this same life also lacks many of the unfortunate, but mitigating, factors so often seen in criminal sentencing. Zgoznik has not suffered financial hardships or any tragic circumstances that might tempt one into shirking the civic responsibility of paying taxes or induce one into committing fraud.

Following Zgoznik's conviction, the court received numerous letters attesting to his good character and history. Such letters, including a letter from Auxiliary Bishop James Quinn, are evidence of his history and characteristics, and the court has given them proper consideration.

**3. Protecting the Public, Promoting Respect for the Law, Providing Just Punishment and Deterrence**

The imposition of a just sentence requires a delicate balance of often competing sentencing policies and theories of punishment.

The sentence imposed must protect the public. One means of achieving this goal is through specific and general deterrence. Yet specific and general deterrence are inherently in conflict with one another, as the former requires the focus on the individual and the latter requires the focus on the larger societal good. The court has no doubt that the lengthy and costly ordeal of a trial and the stress of a

-11-

conviction have deterred Zgoznik from future crime, and instilled a respect for the law. The very prosecution created substantial publicity and notoriety for Zgoznik; his reputation is forever tarnished; he has incurred substantial debt for his legal defense; and the restitution owed is substantial. It is *most unlikely* that Zgoznik will re-offend.

Yet, the sentence must also be sufficient to deter others from committing similar crimes and promote respect for the law. While it is not always necessary to incarcerate a defendant to promote such respect and demonstrate the seriousness of the crime, a sentence of probation, as requested in Smith's sentencing memorandum, does not, in this instance, promote such respect or reflect the seriousness of the crimes he has committed.

The sentence imposed on Zgoznik strikes the appropriate balance among the competing sentencing policies. Zgoznik will spend over a year in prison, followed by two years of supervised release with numerous restrictions and requirements, including substantial community service. Zgoznik must also bear the heavy restitution requirement.

As part of his sentence, Zgoznik must use his education, skills, and background to perform 300 hours of community service, which will benefit the local non-profit organizations and the community at large. Not only does this requirement add to the punishment, it also puts to good use Smith's abilities that would otherwise be wasted during a more lengthy prison term. *See United States v. Coughlin*, 2008 WL 313099 (W.D. Ark. 2008).

### 4. The Kinds of Sentences Available

The statutory maximum sentence on counts 1 through 9 is 20 years; 5 years on count 18; and 3 years on counts 23 through 27. The advisory sentencing guidelines range for a base offense level of 24 and criminal history category of I is a term of imprisonment between 51 and 63 months. The advisory

guidelines recommend against probation. Zgoznik can receive a fine of up to $250,000 under the statute for counts 1 through 9 and 18; $5,000 for count 23; and $100,000 for counts 24 through 27. The guideline range is between $15,000 and $150,000.

### 5. The Need to Avoid Disparities

This court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In sentencing Zgoznik below the advisory guidelines range, the court does not easily set aside or disregard the guidelines because they are the "product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594 (2007). Indeed, the court recognizes that "one of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes." *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008).

The sentence imposed on Zgoznik is not disparate from the treatment of similar offenders and the sentence imposed avoids unwarranted disparities. During fiscal year 2007, 49.2 % of defendants convicted of tax crimes in the Sixth Circuit received prison time; another 15.4 % received a split sentence that involved some prison time. *See* United States Sentencing Commission, Office of Policy Analysis, Type of Sentence Imposed by Primary Offense Category (Table 5). Among the tax defendants given prison sentences, the median sentence in the Sixth Circuit was 12 months. *Id.* at Table 7. Nationwide, the median sentence imposed was 15 months.[4] *Id.*

---

[4] The court recognizes that the statistics provided here are not ideal; the precise nature and circumstances of the tax crimes that compromise the statistics are not known and therefore a more careful analysis is not possible. Nonetheless, the court finds the statistics to be helpful in providing a rough sketch of sentencing norms and averages.

-13-

The court is aware of individual cases that vary from both the national and circuit averages. While § 3553(a)(6) is concerned with *national* disparities, *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007), the district court may "consider disparities between codefendants." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). The sentence imposed on Zgoznik is within both the national and circuit averages for similar crimes and is similar to the sentence imposed upon his co-defendant.

Finally, when the court properly calculates the guidelines range, it necessarily gives significant weight and consideration to the need to avoid unwarranted disparities. *Gall*, 128 S.Ct. at 599.

### 6. The Need to Provide Restitution

The court finds that the appropriate amount of restitution owed to the IRS is $213,978 based on the taxes owed by the Zgoznik Entities (ZJA/IFA) as a result of the false consulting and professional services deductions for the payments to JHS Enterprises and Tee Sports, Inc. The court also orders restitution to the Catholic Diocese of Cleveland in the amount of $784,627, which is the total of the kickbacks Zgoznik paid to Smith.

### IV. A Sentence that is Sufficient but Not Greater than Necessary

The court has carefully and thoroughly considered both Zgoznik's and the government's briefs, the advisory guidelines range, and the § 3553(a) factors. The court must impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). Therefore, the court concludes that a sentence within the guidelines range is not appropriate to satisfy the purposes of criminal punishment.

Zgoznik has a background of meaningful contributions to his community and a lack of any previous criminal involvement. Yet, Zgoznik also faced no financial hardships and his actions skirted

his civic responsibility to pay taxes properly owed. The imposed term of imprisonment, while lower than the guidelines range, still represents a significant period of incarceration. The amount of restitution owed and the cost of Zgoznik's prosecution will forever diminish his quality of living and professional standing and provide sufficient deterrence and respect for the law.

### V.  Conclusion

Therefore, for the reasons stated above, the court sentences Zgoznik to a term of imprisonment of 12 months and one day on counts 1 through 9 and 12 months and one day on each of the remaining counts, to be served concurrently with the sentence on counts 1 through 9. The court also imposes three years of supervised release to follow the term of imprisonment and 400 hours of community service during the period of supervised release. Finally, the court orders restitution to the IRS in the amount of $213,978 and to the Catholic Diocese of Cleveland in the amount of $784,627.

This Order is final and appealable.


IT IS SO ORDERED

                                              s/Ann Aldrich
                                              ANN ALDRICH
                                              UNITED STATES DISTRICT JUDGE

                                              Dated: September 28, 2009